KOHNE ET AL., APPELLEES, *v.* WOOD ET AL., APPELLANTS.

(No. 4795—Decided November 15, 1954.)

Messrs. *Wetli & Testa,* for appellees.
Messrs. *DiSalle, Green & Haddad* and *Mr. James D. Nestroff,* for appellants.

FESS, J. This is an appeal on questions of law from a judgment of the Toledo Municipal Court in favor of the plaintiffs in the sum of $500.

On February 13, 1953, plaintiffs (hereinafter sometimes referred to as the purchaser) and defendants (hereinafter sometimes referred to as the seller) entered into an agreement in writing whereby the plaintiffs offered to purchase a parcel of real estate from defendants for the sum of $9,900 upon the following terms:

"$25 herewith deposited to apply on the purchase price; the purchasers further agree to pay in cash the additional sum of $225, balance of purchase price to be paid as follows: $250 on closing, balance by G. I. loan for $9,400, when warranty deed is furnished," etc.

The agreement further provided:

"If this proposition is accepted by the owner within 5 days, on these terms or any other terms whatsoever between the parties hereto, it shall constitute a binding contract for the purchase and sale (through the Walter J. Urban Co., agent) of said property. If the owners fail to accept this proposition upon the terms herein set forth, the said deposit of $25 shall be returned to the purchasers, without any liability upon the part of the Walter J. Urban Co. to either party. If the owners accept this proposition, or any modification thereof, the purchasers hereby agree to deposit with the Walter J. Urban Co. the sum of $225 as additional earnest money which shall be applied on the purchase price."

The proposition was accepted by the defendants and shortly thereafter plaintiffs paid the broker $225. Thereafter, on or about March 25, plaintiffs paid to the broker an additional $250. Why such payment was made is unexplained, other than that one of the plaintiffs testified he called one of the defendants and told

him the deal was going to close within ten days and that he was going to pay the $250 to the broker. Defendants made no objection to the payment of this additional $250 to the broker. One of the plaintiffs testified also that his offer was made contingent upon securing the $9,400 loan. But he was unable to obtain the necessary financing and the deal was apparently mutually terminated. Thereupon, the purchaser demanded from either the seller or the broker the return of the $500 which had been paid to the broker.

In 8 Ohio Jurisprudence (2d), 95, Section 22, it is stated:

"A real estate broker has no authority, in the absence of special agreement, to receive payment of the purchase money for land sold through his efforts, and one who pays such broker the purchase price of property sold by him in his representative capacity does so at his peril, in the absence of express or apparent authority in the broker to receive such purchase money." (Citing *Frank* v. *Levy,* 24 W. L. B., 227, 11 Dec. Rep., 67.)

It is of interest to note that upon appeal of the *Frank case* (10 C. C., 554, 6 C. D., 819) the Circuit Court found that the broker had apparent and actual authority, as agent of the plaintiff, to deliver the deed made by the plaintiff to the defendant, and to receive from her the purchase price for the property, and concluded that the owner must suffer the loss as a result of the defalcation of the broker. In other words, the Circuit Court held that payment to the broker was payment to the owner.

Apparent authority in an agent to receive payment may be created by a course of dealing, or previous conduct, leading persons of ordinary prudence to believe that the principal had conferred authority upon

the agent to receive payment. 2 Ohio Jurisprudence (2d), 126, Section 75. As a general rule, where a payment is properly made to a known agent acting within the scope of his authority for a disclosed principal, without mistake, fraud or duress, and the payer ultimately becomes entitled to the return of the payment, his action is not against the agent individually, but against the principal. 2 Ohio Jurisprudence (2d), 265, Section 135, citing *Dobell* v. *Koch,* 16 Ohio App., 41.

In the instant case, the listing contract between the owner and the broker merely conferred upon the broker the exclusive right, within 90 days, to sell the property, and contained no provisions regarding receipt of the purchase money. Under the terms of the listing agreement, the broker thereby only became the agent of the owner to negotiate the sale. However, the sales agreement in its terms provided that the $25 deposit and the $225 additional earnest money be paid to the broker, and that upon acceptance of the proposition it should constitute a binding contract for the purchase and sale through the broker of the property. Under the terms of the agreement, the first $250 received by the broker was for and on behalf of his principal, the owner. It may be inferred from the evidence that the broker called the purchaser, advised him that the deal would be ready for closing, and requested payment of the additional $250 incident thereto. The evidence fails to disclose that the broker had any express authority to receive this additional payment. But it can not be held that a finding that the owner clothed the broker with apparent authority to receive this additional payment is against the weight of the evidence or contrary to law. It was the intention of the purchaser to make this payment to the broker to be ap-

plied on the ultimate balance due upon the contract. It was therefore the owner's money.

The owner defendants contend that the Court of Appeals for Hamilton County overruled *Dobell* v. *Koch, supra,* in *Downey* v. *Arnonoff,* 19 Ohio App., 424. But in the *Downey case,* the broker expressly agreed to return the earnest money if a satisfactory loan was not procured, or if the title be imperfect. *Glens Falls Indemnity Co.* v. *Kirkpatrick,* 46 Ohio App., 23, 187 N. E., 643, and *Glen Falls Indemnity Co.* v. *Bradfute,* 44 Ohio App., 189, 184 N. E., 770, turn primarily upon the liability of a surety upon a broker's bond and are not applicable to the circumstances presented by the instant case. *Phillip Metropolitan Colored M. E. Church* v. *Wahn-Evans & Co.,* 153 Ohio St., 335, 91 N. E. (2d), 686, 17 A. L. R. (2d), 1007, is to be distinguished because in that case the broker likewise expressly agreed to refund the deposit of earnest money.

Cases relating to defaulting escrow holders likewise are decided upon the terms of the escrow arrangement and the circumstances under which the payments have been made. 15 A. L. R. (2d), 870. For a comprehensive annotation on the subject of payment to a broker or agent authorized to sell real property as payment to the principal, see 30 A. L. R. (2d), 805.

In the instant case, it is apparent that the $500 was paid upon condition that the loan be secured, but it was paid to the broker as agent for the owner, and there is no evidence to support the claim that the broker was obligated to refund the deposit upon failure to complete the transaction. It is unfortunate, of course, that either party should suffer the loss, but we are forced to the conclusion that the owner is liable for the return of the money. As an abstract proposition,

the owner has a right of recovery from the broker for his failure to account for such deposit.[1]

*Judgment affirmed.*

DEEDS, J., concurs.
CONN, J., concurs in part and dissents in part.

CONN, J. I concur in the majority opinion which holds that the earnest money deposited with the agent in two installments, in the total amount of $250, was authorized by the contract, and, in legal effect was payment to the sellers, defendants herein. It is my opinion that the further payment to the broker of "closing money," so referred to in the amount of $250, was made at the plaintiffs' risk at the time it was made, for the reason that such payment to the broker, a special agent, was not contemplated by the contract and, therefore, in legal effect, was not a payment to the defendants. I shall state my reasons as briefly as possible.

It is a general rule that where one deals with an agent, he is bound to ascertain the extent of his authority and he has no right to assume that the authority of such agent is unlimited. This principle has wide application in the law of agency, and is strictly applied where one deals with a special agent.

In the instant case, the sale and purchase contract consists of a printed form, presumably supplied by the real estate broker. Pursuant to its terms, the purchasers, plaintiffs herein, agreed to pay $9,900 for the real estate of the owners, defendants herein, as follows: $25 "to apply on purchase price" and "pur-

---

[1]Although not disclosed in the record, the broker became insolvent.

chasers further agree to pay in cash the additional sum of $225'' upon acceptance by the owners, the payments being referred to in the contract as "earnest money." The contract provided also that these payments to the broker "shall be applied to the purchase price."

The contract provided further that "balance of purchase price to be paid as follows: $250 on closing. Balance by G. I. loan for $9,400."

By reason of the express terms of the contract, it is apparent that the earnest money in the amount of $250 deposited with the agent, as expressly provided for in the contract, together with the amount of the G. I. loan of $9,400, did not equal the purchase price, and that a further cash payment should be made by plaintiffs. This further payment was provided for in the contract in language somewhat informal but expressive of the intention of the parties that it should be made at the time of closing the sale and purchase of the property.

Notwithstanding that the broker is a special agent in the instant case, and bound by the terms of a written contract between his principals and prospective purchasers, the majority opinion holds that the plaintiffs could, on the theory of apparent authority, make further payment to the broker, contrary to the clear intention of the parties as expressed on the face of the contract.

If the doctrine of apparent or implied authority were applicable to the situation presented on the record here, it seems to follow that the plaintiffs without peril could have made payment to the broker of any other amount, even to the extent of the remainder of the purchase money, and thereupon stand on the claim that such payment was payment to the principal, and demand relief accordingly. In my opinion, the doctrine of apparent authority can have no appli-

cation in the instant case, as the rights and duties of the parties and the broker had been reduced to writing.

However, even if the plaintiffs had not been parties to the contract, which expressly conferred specific authority on the broker, they were bound to ascertain whether or not the broker was authorized to receive payment of purchase money for and on behalf of the defendants. The rule is stated in 2 Ohio Jurisprudence (2d), 85, Section 49, as follows:

"One who deals with a known agent should not blindly trust the agent's statements as to the extent of his powers, but should use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his authority. He must act in good faith, respecting every restriction upon the agent's authority of which he may have, or should have, notice. The law indulges in no bare presumption of agency, and an agency can not be established merely by declarations of the agent."

The record discloses that there was a telephone conversation between the buyers and the sellers relative to the payment of "some closing money." There is a conflict as to the nature of this conversation, but it does appear that defendants did not authorize plaintiffs to make further payments to the agent. In any event, the defendants would hardly be estopped to challenge the authority of the broker to receive further payments under the circumstances, nor would the express terms of the contract be altered or modified by this procedure.

Briefly stated, my conclusion is that in the light of the contract, the payment to the broker of earnest money, as stipulated therein, was payment to the defendants for which plaintiffs are entitled to reimbursement. No further payments to the broker were provided for in the contract and it follows that the sub-

sequent payment of $250 made by plaintiffs to the broker was made at plaintiffs' peril and, not being within the contract, was not a payment to the defendants. In my opinion, the judgment of the trial court should be reversed and a new trial ordered.